**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

                             :

IN RE JPMORGAN CHASE & CO.     :
ERISA LITIGATION              :

                             :

                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OPINION & ORDER

12 Civ. 04027 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 08 201[?]

GEORGE B. DANIELS, United States District Judge:

Plaintiffs, a putative class of current and former employees of JPMorgan Chase & Co.

("JPMorgan") who participated in the JPMorgan Chase 401(k) Savings Plan (the "Plan"),

bring this consolidated class action. (Fourth Amended Class Action Complaint ("FAC") ¶ 1,

ECF No. 61.) They claim that Defendants JPMorgan Chase Bank, N.A. ("JPMC Bank"),

JPMorgan Chase & Co. ("JPMorgan"), John Wilmot, and Douglas Braunstein (collectively,

"Defendants") breached their duty of prudence under the Employee Retirement Income

Security Act ("ERISA"). (FAC ¶¶ 30–34, 240–41.)

Defendants move to dismiss the Fourth Amended Complaint for failure to state a

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' motion to dismiss for failure to state a claim is GRANTED.

## I.    BACKGROUND AND PROCEDURAL HISTORY

This Court more fully described the background of this case in a previous opinion,

*In re JPMorgan Chase & Co. ERISA Litigation*, No. 12 Civ. 04027, 2014 WL 1296882

(S.D.N.Y. Mar. 31, 2014), *vacated and remanded*, No. 14-1514 (2nd Cir. Nov. 25, 2014),

incorporated herein by reference. One of the Plan's investment options was the JPMorgan

Chase Common Stock Fund (the "Stock Fund"), an employee stock ownership plan ("ESOP") that invests primarily in JPMorgan common stock. (FAC ¶ 39.) Plaintiffs invested some of their retirement savings in the Stock Fund. (*See* FAC ¶ 25–27.) Under the Plan, participants have exclusive authority to direct how their account assets are invested among the Plan's investment options. (*See* Pepperman Decl., Ex. A, JPMorgan Chase 401(k) Savings Plan §§ 6.7, 6.10, ECF No. 65-1.) The Plan allocates matching contributions made by JPMorgan and affiliated employers in the same manner that participants allocated the contributions to their accounts. (Pepperman Decl., Ex. D, First Amendment to the JPMorgan Chase 401(k) Savings Plan at 5, ECF No. 65-4.)

Plaintiffs allege that JPMorgan concealed risk-escalating trades made by its Chief Investment Office ("CIO"), the unit responsible for managing the synthetic credit portfolio. (FAC ¶ 4, 240.) A trader named Bruno Iksil, who earned the moniker "the London Whale," operated that portfolio, which lost over $6 billion. (FAC ¶ 4.) Plaintiffs assert that Defendants knew or should have known, based on inside information, that JPMorgan's concealment of the CIO's risk-escalating trades throughout the class period artificially inflated the price of JPMorgan stock. (FAC ¶ 240). Plaintiffs assert that Defendants, as fiduciaries, therefore breached the duty of prudence under ERISA by continuing to offer Plan participants the option to invest in the Stock Fund during the class period and failing to publicly disclose the alleged misconduct. (FAC ¶ 240–41.)

In a previous decision, this Court dismissed this action in its entirety and held that Plaintiffs' duty of prudence claim failed because Plaintiffs could not overcome the *Moench* presumption for ESOP fiduciaries under then-controlling Second Circuit law. *In re JPMorgan Chase & Co. ERISA Litig.*, 2014 WL 1296882, at *3–6. While that decision was

on appeal, the Supreme Court rejected the *Moench* presumption and articulated the requirements that plaintiffs must meet to state a claim for breach of ERISA's duty of prudence against ESOP fiduciaries. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467–73 (2014). The Second Circuit then vacated this Court's March 31, 2014 judgment and remanded the case to determine the effect of the Supreme Court's decision on this action. (Mandate, Dec. 18, 2014, ECF No. 60.) Plaintiffs filed their Fourth Amended Complaint on January 8, 2015, asserting only a claim for breach of the duty of prudence under ERISA. (*See* FAC ¶¶ 235–243; *see also* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the FAC ("Opp'n") at 2, ECF No. 68.) Defendants filed their Motion to Dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 3, 2015. (*See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem."), Mar. 3, 2015, ECF No. 64.)

## II.    LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

In deciding a Rule 12(b)(6) motion, a court "accept[s] all factual allegations in the complaint as true . . . and draw[s] all reasonable inferences" in favor of the plaintiffs. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). A court is "not, however, 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). In order to survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ERISA duty-of-

prudence suits, "the motion to dismiss for failure to state a claim . . . requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Dudenhoeffer*, 134 S. Ct. at 2471. It is an "important mechanism for weeding out meritless claims." *Id.*

In deciding a motion to dismiss, a court is not limited to the face of the complaint. A court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST JPMC BANK AND JPMORGAN

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (alterations in original) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). "[ERISA] provides that not only the persons named as fiduciaries by a benefit plan but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA 'fiduciary.'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (internal citations omitted). Under ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[A] person may be an ERISA fiduciary with respect to certain matters but not others; fiduciary status exists only to the extent that the person has or exercises the described authority or responsibility over a plan." *Coulter*, 753 F.3d at 366 (internal quotation marks omitted).

JPMC Bank and JPMorgan (collectively, the "Corporate Defendants") are not named fiduciaries under the Plan. (*See* FAC ¶¶ 31–32.) As "ERISA imposes liability *only* upon named fiduciaries and *de facto* fiduciaries," Plaintiffs may pursue their claims against the Corporate Defendants only if JPMC Bank and JPMorgan acted as *de facto* fiduciaries. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 08853, 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005). Plaintiffs, however, have not pleaded sufficient facts to plausibly allege that the Corporate Defendants are *de facto* fiduciaries.

### A.    JPMC Bank

Plaintiffs assert that JPMC Bank is a *de facto* fiduciary because it is the Plan's sponsor and a trustee of the Plan's assets. (FAC ¶ 31.) The allegation that JPMC Bank is the Plan's sponsor is insufficient to support the claim that JPMC acted as a *de facto* fiduciary because actions taken as a sponsor, such as establishing a plan, are not fiduciary functions that trigger liability under ERISA. *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 345 (S.D.N.Y. 2010) ("[A] plan sponsor . . . does not act in a fiduciary capacity with respect to its decisions regarding the plan design, or its decisions to adopt, modify, or terminate the ERISA plan." (internal quotation marks omitted) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999))); *see also Coulter*, 753 F.3d at 367.

The allegation that JPMC Bank is a Plan trustee is also insufficient to support the claim that JPMC acted as a *de facto* fiduciary. ERISA provides that a trustee shall not "have

exclusive authority and discretion to manage and control the assets of the plan . . . [when] the

plan expressly provides that the trustee or trustees are subject to the direction of a named

fiduciary . . . , in which case the trustees shall be subject to proper directions of such

fiduciary . . . ." 29 U.S.C. § 1103(a)(1).  A directed trustee's "liability is limited to instances

in which it fails to follow such proper directions or it complies with directions that are

improper, or contrary to the Plan or ERISA." *In re Lehman Bros. Sec. & ERISA Litig.*,

No. 09 MD 02017, 2012 WL 6021097, at *2 (S.D.N.Y. Dec. 4, 2012) (quoting *DeFelice v.

U.S. Airways, Inc.*, 397 F. Supp. 2d 735, 746 (E.D. Va. 2005)).  The Plan's Trust Agreement

designates the Employee Plan Investment Committee "as the named fiduciary with the

authority to control and manage the assets, operation and administration of the Plan."[1]

(Pepperman Decl., Ex. L, JPMorgan Chase 401(k) Savings Plan Trust Agreement ("Trust

Agreement") Art. 1, ECF No. 65-12 (defining "Committee"); *see also* Trust Agreement

Art. 6.2; Pepperman Decl., Ex. A, JPMorgan Chase 401(k) Savings Plan § 12.2(b), ECF

No. 65-1.)  Furthermore, the Trust Agreement provides that "[JPMC] shall be a directed

trustee with respect to the monitoring and collecting of contributions." (Trust Agreement

Art. 6.1(d).)  JPMC, as a directed trustee, lacked the discretion to prohibit Plan participants

from making Stock Fund purchases.  Plaintiffs therefore have failed to plead sufficient facts to

---

[1] Wilmot was a member of the Employee Plan Investment Committee.  (FAC ¶ 33.)  He was
the CFO of the CIO during the class period.  (FAC ¶ 33.)  Braunstein was the CFO of
JPMorgan during the class period.  (FAC ¶ 34.)  Braunstein was one of two members of the
Selection Committee, which is responsible for selecting the Employee Plan Investment
Committee's members.  (FAC ¶¶ 40, 42; Pepperman Decl., Ex. A, JPMorgan Chase 401(k)
Savings Plan § 12.2(a), ECF No. 65-1.)  The Selection Committee is also a named fiduciary
under the Plan.  (FAC ¶ 40; Pepperman Decl., Ex. A, JPMorgan Chase 401(k) Savings Plan
§ 12.2(a), ECF No. 65-1.)

support the allegation that JPMC Bank is a *de facto* fiduciary.  Plaintiffs have failed to state a

claim against JPMC Bank.

**B.      JPMorgan**

Plaintiffs have pleaded no facts to support the allegation that JPMorgan was a *de facto*

Plan fiduciary.  (*See* FAC ¶ 32.)  They have made only the conclusory allegation that

JPMorgan was such a fiduciary because "it has discretionary authority and control regarding

the administration and management of the Plans [sic] and its assets."  (*See* FAC ¶ 32.)  Such

bare legal conclusions are insufficient to state a claim against a purported ERISA fiduciary.

*See In re Bank of Am.*, 756 F. Supp. 2d at 347.  Therefore, Plaintiffs have failed to state a

claim against JPMorgan.

**IV.     PLAINTIFFS  HAVE  NOT  ADEQUATELY  PLEADED  AN  IMPRUDENCE
          CLAIM AGAINST ANY DEFENDANT**

ERISA imposes a duty of prudence on pension and benefit plan fiduciaries.  29 U.S.C.

§ 1104(a).  Under the Supreme Court's recent *Dudenhoeffer* decision, Plaintiffs must satisfy

two requirements to state a claim for breach of the duty of prudence on the basis of inside

information.  *See Dudenhoeffer*, 134 S. Ct. at 2472.  First, Plaintiffs must "plausibly allege an

alternative action that the [D]efendant[s] could have taken that would have been consistent

with the securities laws."  *Id.*  Second, Plaintiffs must plausibly allege "that a prudent

fiduciary in the same circumstances [as Defendants] would not have viewed [the alternative

action] as more likely to harm the fund than to help it."  *Id.*

To satisfy the first *Dudenhoeffer* prong, Plaintiffs propose two alternative actions that

Defendants  could  have  taken.    First,  Plaintiffs  argue  that  Plan  fiduciaries  could  have

"stopp[ed] new purchases of the Stock Fund" by Plan participants.  (FAC ¶ 208.)  Second,

Plaintiffs argue that Defendants could have disclosed JPMorgan's purported misconduct to Plan participants. (*See* FAC ¶ 208.)

### A.    Both of Plaintiffs' Proposed Alternative Actions Would Have Required Disclosure to the General Public.

The parties agree that Plaintiffs' proposed alternative actions would both have required Defendants to make public disclosures about JPMorgan's purported misconduct. (*See* Defs.' Mem at 17–23; Opp'n at 13–15, 19–20.)   Defendants could not have prevented Plan participants from making new Stock Fund purchases without public disclosures. The Plan gives participants exclusive authority to direct how their account assets are invested among the Plan's investment options.  (*See* Pepperman Decl., Ex. A, JPMorgan Chase 401(k) Savings Plan §§ 6.7, 6.10, ECF No. 65-1.)   Furthermore, the Plan allocates matching contributions made by JPMorgan and affiliated employers in the same manner that participants allocated the contributions to their accounts.  (Pepperman Decl., Ex. D, First Amendment to the JPMorgan Chase 401(k) Savings Plan at 5, ECF No. 65-4 (providing that "Matching Contributions will be invested in the same manner as their Contributions as of the date the Matching Contributions are allocated")); *cf. Dudenhoeffer*, 134 S. Ct. at 2464 (where "[employer's] matching contributions . . . [we]re always invested initially in the ESOP, though the participant c[ould] then choose to move them to another fund.")   Defendants therefore could have prevented further Stock Fund purchases only by denying participants the choice of investing in the Stock Fund.  If the Plan fiduciaries had sought to halt new Stock Fund purchases, ERISA would have required the plan administrator to notify Plan participants in advance. *See* 29 U.S.C. § 1021(i)(1).  Federal securities laws, in turn, would have required JPMorgan to disclose that information to the public.   *See* 17 C.F.R. § 243.100(a)(1).

Defendants would expose themselves to liability under Section 10(b) and Rule 10b-5 if they failed to make such disclosures. Plaintiffs' second proposed alternative action—disclosure of JPMorgan's purported misconduct to Plan participants—would similarly have required disclosure to the general public.

**B.     Plaintiffs Have Failed to Plausibly Allege That a Prudent Fiduciary Would Not Have Viewed Public Disclosures as More Likely to Harm Than Help the Fund.**

*Dudenhoeffer*'s second prong requires Plaintiffs to plausibly allege "that a prudent fiduciary in the same circumstances [as Defendants] would not have viewed [the alternative actions] as more likely to harm the fund than to help it." 134 S. Ct. at 2472. As the parties agree that both of Plaintiffs' proposed alternative actions would have required Defendants to make public disclosures about JPMorgan's purported misconduct, Plaintiffs must plausibly allege that a prudent fiduciary would not have viewed such public disclosures as more likely to harm than help the fund. In evaluating whether Plaintiffs have satisfied that element, this Court must consider

> whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that . . . publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

*Id.* at 2473.

The Complaint makes only conclusory allegations that a prudent fiduciary in Defendants' circumstances would not have concluded that making public disclosures would do more harm than good. Plaintiffs acknowledge that Defendants' possible concern about a stock price drop was "well-founded." (FAC ¶ 18; *see also* FAC ¶ 212.) They assert, however, that the "fact" that "disclosing a fraud *always* causes a company's stock price to drop" does

not "justif[y] perpetuating a fraud" because "the longer a fraud goes on, the more painful the correction w[ill] be." (FAC ¶ 18.) These assertions are not particular to the facts of this case and could be made by plaintiffs in any case asserting a breach of ERISA's duty of prudence. They amount to no more than factors Defendants might have considered when deciding whether to make public disclosures. But *Dudenhoeffer* sets a higher pleading standard. Plaintiffs must plead enough facts to plausibly allege that a prudent fiduciary in Defendants' circumstances would not have believed that public disclosures of JPMorgan's purported misconduct were more likely to harm than help the fund. *See* 134 S. Ct. 2472.

Plaintiffs' allegations of fraud do not excuse them from satisfying *Dudenhoeffer*. As here, the complaint in *Dudenhoeffer* alleged that certain ERISA fiduciaries, who were also corporate insiders, knew inside information indicating that the employer's officers had made material misstatements to the market that inflated the price of the employer's stock. 134 S. Ct. 2464. *Dudenhoeffer*'s two-part pleading standard surely applies to cases such as this one where plaintiffs allege fraud and artificial inflation. Plaintiffs therefore are not excused from satisfying *Dudenhoeffer*'s second prong. As Plaintiffs have failed to plausibly allege that a prudent fiduciary in Defendants' circumstances would not have viewed making public disclosures of JPMorgan's purported misconduct as more likely to harm than help the fund, Plaintiffs have failed to state a claim for breach of ERISA's duty of prudence.

## V.   CONCLUSION

Defendants' Motion to Dismiss the Fourth Amended Class Action Complaint for failure to state a claim is GRANTED.

The Clerk of the Court is directed to close the motion at ECF No. 63.

Dated: January 8, 2016
         New York, New York

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge